

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

August 24, 1960

Mr. William A. Harrison
Commissioner of Insurance
International Life Building
Austin 14, Texas

Opinion No. WW-913

Re: May an insurer who has made a
deposit with the State Treasurer
under Article 3.15 of the Code
elect to have its deposit consi-
dered as held under Article 1.10,
paragraph 17 of the Code.

Dear Mr. Harrison:

Your opinion request recites that prior to May 8, 1959, domestic
legal reserve life insurance companies were authorized to make deposits
with the State Treasurer under Articles 3.15 and 3.16 of the Insurance Code
only. On that date the Commissioner of Insurance and the State Treasurer
held approximately 56 deposits not having been made under authority of
either of these articles. You state that such deposits were usually made
to enable the depositing insurer to enter a foreign state. The records con-
cerning such deposits carried the word "voluntary" in the space provided
for citing the statute under which the deposit was made.

On May 8, 1959, paragraph 17 of Article 1.10 of the Insurance Code
became effective. It specifically authorizes voluntary deposits with the
State Treasurer where necessary to enable a domestic company to do busi-
ness in a foreign state. Since that time, at the election of the depositors,
these "voluntary" deposits previously made have been considered as hav-
ing been made under such Article.

You state that in addition to these voluntary deposits, the Treasurer
holds 27 deposits made, at the option of the insurer, under Article 3.15.
Some of these companies are asserting that these deposits are "voluntary,"
having been made at their option, and also, that such deposits were made for
the purpose of gaining admission to another state.

Consequently, you have asked the following questions:

" 1) May an insurer whose deposit is held under
Art. 3.15 of the Code elect to have its deposit considered
to be held under Par. 17 of Art. 1.10 upon proof that the
deposit was made for the purpose of gaining admission
to another state.?

" 2) If your response to the above question is in
the affirmative, we then request your advice as to whether
the depositing company may redesignate the purpose of the

deposit in accordance with Par. 17(a) of Art. 1.10 and
withdraw such deposit upon presentation of satisfactory
evidence that all obligations have been discharged inso-
far as the class of creditors or policyholders appro-
priate to the designation is concerned?''

Article 3.15 reads as follows:

"Any 'domestic' company may, at its option, de-
posit with the Treasurer of this State, securities in which
its capital stock is invested, or securities equal in amount
to its capital stock, of the class in which the law of this
State permits such insurance companies to invest their
capital stock, and may, at its option, withdraw the same
or any part thereof, first having deposited with the Treasurer,
in lieu thereof, other securities of like class and equal a-
mount and value to those withdrawn. Any such securities,
before being so originally deposited or substituted, shall be
approved by the Board of Insurance Commissioners. When
any such deposit is made, the Treasurer shall execute to
the company making such deposit a receipt therefor, giv-
ing such description of said stock or securities as will iden-
tify the same, and stating that the same are held on deposit
as the capital stock investments of such company; and such
company shall have the right to advertise such fact or print
a copy of the Treasurer's receipt on the policies it may
issue; and the proper officer or agent of each insurance
company making such deposit shall be permitted at all
reasonable times to examine such securities and to detach
coupons therefrom, and to collect interest thereon, under
such reasonable rules and regulations as may be prescribed
by the Treasurer and the Board of Insurance Commissioners.
The deposit herein provided for, when made by any company,
shall thereafter be maintained so long as said company shall
have outstanding any liability to its policyholders in this
State. For the purpose of state, county, and municipal tax-
ation, the situs of securities deposited with the Treasurer
by domestic insurance companies shall be in the city and
county where the principal business office of such company
is fixed by its charter."

It can be seen that the deposit therein made is for the protection of
its policyholders in this State. Such statutes are generally held to create
trust funds of the deposits. Texas Fidelity & Bonding Co. v. City of Austin,
246 S.W. 1026. Additionally, by making a deposit under Article 3.15 an
insurer obtains the right to advertise the fact of such deposit on its policies.
Complete protection of the deposit for the policyholders is assured by the
requirements of Article 3.15, that such deposit may not be withdrawn unless
other securities of the same class and of equal amount and value are first

deposited in lieu thereof, and that such deposit must be maintained so long as said company shall have outstanding any liability to its policyholders in this state. That there are no exceptions to these plain provisions has been established by Opinions O-5051 and WW-362.

It is unquestionable that some of the insurers making deposits under Article 3.15 were motivated, to some extent at least, by a desire to qualify to do business in other states. Opinion O-3855 invites such a course of action. (That opinion speaks of Article 4739 which, together with Article 4777, was the predecessor of Article 3.15) However, the opinion is quite plain that the deposit is subject to all the provisions of such Article. As stated therein:

> ". . .We think that the above mentioned company has the right to make the above mentioned deposit provided said deposit does not exceed the capital stock of said company, and, as above stated, the Treasurer is authorized to receive and accept the same. Whether or not this deposit fulfills or meets the requirements of the Illinois law is a matter on which we express no opinion. In other words, we think that the deposit can be made under Article 4739, supra, if all the conditions of said statute are complied with regardless of the motive of the company which prompts the tender and deposit. Of course, when said deposit is made it is subject to all the provisions of the above mentioned statute."

Paragraph 17 of Article 1.10 was passed in 1959 by the 56th Legislature. Subparagraph (a) thereof provides for deposits to be made with the State Treasurer where necessary in order for a domestic company to engage in business in a foreign state. The company making the deposit has two alternatives. It may designate whether such deposit is made "for the protection of all policyholders or creditors of the company wherever they may be located" or "for the protection of the policyholders and creditors of a particular state, country or province."

If made with the latter designation, the deposit may be withdrawn upon filing with the Insurance Commissioner evidence satisfactory to him that the company has withdrawn from business and has no unsecured liabilities outstanding or potential policyholder liabilities or obligations in such other state, country or province. If made for the protection of all policyholders, such deposit may be withdrawn after filing with the Insurance Commissioner evidence satisfactory to him that the company has no unsecured liabilities outstanding or potential policy liabilities or obligations anywhere.

Subparagraph (b) provides:

> "(b) Any voluntary deposit now held by the State Treasurer or State Board of Insurance heretofore made by any insurance company in this State, and which deposit was made for the purpose of gaining admission to another

state, may be considered, at the option of such company, to be hereinafter held under the provisions of this Act."

The companies of which you speak in your opinion request are seeking to bring themselves within the purview of the above quoted paragraph in spite of the fact that their deposits were made under Art. 3.15. This they cannot do. By the use of the term "voluntary deposit" the Legislature undoubtedly had in mind the numerous deposits made under no specific statutory authority and labeled as "voluntary" in the records of the Insurance Department. Proponents of a contrary interpretation have pointed to the legislative history of Paragraph 17 of Article 1.10. As originally introduced, subparagraph (b) thereof prohibited the switching of any deposit "made under the authority of any statute which requires the holding of such deposit for the benefit of the policyholders of this state," obviously referring to Article 3.15. As finally enacted, this qualification was omitted. We do not believe such argument to be persuasive. To allow a redesignation of 3.15 deposits, at least under the second alternative of Paragraph 17, would unquestionably abridge the vested rights of policyholders of this State who purchased policies during the time the deposit was held under Article 3.15. Cochrane v. Pacific State Life Insurance Company, 27 P.2d 196. This is so because when made under 3.15, regardless of motive (Opinion O-3855) the deposit is by the words of the Article for the protection of Texas policyholders. When redesignated for the protection of policyholders or creditors of a particular foreign jurisdiction the Texas policyholders would lose their rights thereto. We cannot read such an intention into Article 1.10, particularly when its wording shows zealous protection of the beneficiaries of the deposits made thereunder in that such deposits may not be withdrawn except under the stated conditions. Our conclusion is reinforced by Section 2 of Chapter 157, Acts 56th Leg., 1959, page 281, which provides:

"Sec. 2. The provisions of this Act shall be cumulative of all other provisions of the Texas Insurance Code, and shall not affect in any manner any other deposit requirement or provision of the Texas Insurance Code." (Emphasis supplied)

Accordingly, in regard to deposits made under Art. 3.15, we answer your first question in the negative, rendering unnecessary an answer to your second question.

Turning now to deposits made under the last paragraph of Article 8.05, we see that such deposits by the plain wording of the statute have no other purpose than the gaining of admission to another state, and can be withdrawn if the company ceases to do business in such other state and has no outstanding unsecured liabilities therein. These provisions are to the same effect as paragraph 17 of Article 1.10 and hence, no vested rights could be affected by allowing a redesignation. They would, therefore, come within paragraph 17, Article 1.10, sub-paragraph (b).

## SUMMARY

Deposits heretofore made under Art. 3.15 of the Insurance Code may not be redesignated as having been made under paragraph 17 of Art. 1.10.  Such a redesignation may be made of deposits heretofore made under Art. 8.05.

Respectfully submitted,

WILL WILSON
Attorney General of Texas

By _____
R. V. Loftin, Jr.
Assistant Attorney General

RVL/pe

APPROVED:

OPINION COMMITTEE:

W. V. Geppert, Chairman
Phocion S. Park, III
W. O. Schultz
Ben Harrison

REVIEWED FOR THE ATTORNEY GENERAL
BY:
Leonard Passmore